James B. Zouras (Pro Hac Vice Pending)
Ryan F. Stephan (Pro Hac Vice Pending)
Justin M. Caparco (Pro Hoc Vice Pending)
Lauren A. Warwick, CA State Bar No. 341643
STEPHAN ZOURAS, LLP
222 West Adams Street, Suite 2020
Chicago, Illinois 60606
Telephone: (650) 561-4791
jzouras@stephanzouras.com
rstephan@stephanzouras.com
jcaparco@stephanzouras.com
lwarwick@stephanzouras.com

*Attorneys for Plaintiff, the general public, and all
others similarly situated*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAN WAGGENER VAN METER, individually, and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>MONDELEZ INTERNATIONAL, INC.; and DOES 1-10,<br><br>Defendant. | **CASE NO.:** 4:24-cv-565<br><br>**CLASS ACTION COMPLAINT:**<br><br>1) Violation of the California Consumers Legal Remedies Act<br><br>2) Violation of California's Unfair Competition Law;<br><br>3) Unjust Enrichment<br><br>**JURY TRIAL DEMAND** |

Plaintiff MEGAN WAGGENER VAN METER ("Plaintiff") brings this action, on behalf of herself and all others similarly situated, against Defendant MONDELEZ INTERNATIONAL, INC., (hereinafter "Mondelez" and/or "Defendant"). Plaintiff alleges the following based upon information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to herself.

## I. NATURE OF THE CASE

1.      Mondelez is one of the world's largest snack food and chocolate companies in the world, bringing in over $31 billion in revenue in 2022.[1] Its most popular products include Oreos, Chips Ahoy!, Clif Bars, and Toblerone. Unfortunately, Mondelez realizes these profits by paying local cocoa farmers as little as $3 per day, forcing those cocoa farmers to use child and child-slave labor.[2]

2.      Mondelez knows its practices perpetuate child labor and child slavery, yet it nonetheless slaps phony "seals" on its products claiming its cocoa is "100% sustainable," "certified," or claiming that it "supports" or "helps" farmers when it knows the opposite is true. It is abhorrent to equate slavery and child labor to a "sustainable" practice.

3.      Likewise, Mondelez's environmental practices devastate the local environment. Mondelez's supply chain has virtually no environmental standards in place. To the contrary, the "[c]hocolate industry drives rainforest disaster in [the] Ivory Coast."[3] This massive deforestation was documented by *The Guardian*, whose investigative reporters "travelled across Ivory Coast and documented rainforests cleared for cocoa plantation; villages and farmers occupying supposedly protected national parks; enforcement officials taking kickbacks for turning a blind eye to infractions and trading middlemen who supply the big brands indifferent to the provenance of beans." *Ibid*. At the current pace of deforestation, there will be no forest left in the Ivory Coast by 2030. *Ibid*.

---

[1] *See Mondelez International Reports*, https://ir.mondelezinternational.com/news-releases/news-release-details/mondelez-international-reports-q4-and-fy-2022-results (last accessed January 26, 2024)
[2] *See "Cadbury Exposed: Dispatches," Channel 4*, https://www.channel4.com/programmes/cadbury-exposed-dispatches (last accessed January 26, 2024)
[3] *See Chocolate Industry Drivers Rainforest Disaster in Ivory Coast*, https://www.theguardian.com/environment/2017/sep/13/chocolate-industry-drives-rainforest-disaster-in-ivory-coast (last accessed January 26, 2024)

CLASS AND REPRESENTATIVE ACTION COMPLAINT

4.      Mondelez's deceptive labeling misleads consumers into believing its products are procured in accordance with environmentally and socially responsible standards, when it knows they are not. Plaintiff was misled by the affirmative misrepresentations on Mondelez's product packaging concerning the use of fair labor and environmental standards and practices. Had she been aware of the misrepresentations described herein, she would not have purchased Mondelez's products.

5.      Plaintiff thus brings this action pursuant to: (i) California Civil Code §§ 1750, et seq. (the Consumers Legal Remedies Act or "CLRA"); (ii) California's Business & Professions Code §§ 17200, *et seq*. (the Unfair Competition Law or "UCL"); and (iii) unjust enrichment. Plaintiff brings this action on behalf of a nationwide class for damages, restitution and injunctive relief, and any other relief deemed appropriate by the court to which this case is assigned.

## II. JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over Mondelez because Mondelez has conducted and continues to conduct business in the State of California, and because Mondelez has committed the acts and omissions complained of herein in the State of California.

7.      This court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d), as Plaintiff (California) and Mondelez (Illinois and Virginia) are diverse, there are over 100 class members, and the amount in controversy exceeds $5 million.

8.      Venue is proper in the Northern District of California, because a substantial portion of the acts giving rise to this action occurred in this district.

## III. PARTIES

9.      Plaintiff Waggener Van Meter is, and at all times mentioned herein was, an individual citizen of the State of California. At all material times, she was a resident of Alameda County.

10.      Plaintiff would like to buy Defendant's products in the future if and when they were produced as advertised by Mondelez. She can no longer rely on the accuracy of the representations addressed below in deciding whether to purchase these products, and, furthermore, cannot readily determine whether the misrepresentations have been corrected.

11.     Defendant Mondelez is a Virgina corporation with its principal place of business at 905 West Fulton Market, Chicago, Illinois 60607.[4] Mondelez is one of the largest snack companies in the world.[5] Mondelez promotes itself as "committed to creating a positive impact on the world"[6], that it "Treats People Fairly,"[7] and that it works "hard to prevent pollution, minimize waste, and reduce the use of natural resources." *Id*. at 8.

12.     Plaintiff is unaware of the true names and capacities of DOES 1 through 10, inclusive, and therefore sues these defendants by their fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. At all times relevant to this action, each of the fictitiously named defendants was an agent, joint venturer, integrated enterprise, partner, member, shareholder, officer, director, co-conspirator, or alter ego of Defendant, and was acting within the course and scope of such agency or employment. Each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and such defendants directly and proximately caused Plaintiff's injuries as herein alleged.

## IV. FACTUAL ALLEGATIONS

### A.     Mondelez Knows it Is Perpetuating Child and Slave Labor.

13.     Child labor and environmental degradation in the Côte D'Ivoire are well-known and undisputed by Mondelez. The problem is so widespread due, in part, to the nature of Cocoa farms. The number of cocoa farmers in Côte d'Ivoire and Ghana is estimated to be around 2 million. Most of them are small farms with a size normally no larger than 3.5 hectares (10,000 square meters).[8] The majority of these farmers are also dispersed around the country in a region called the "cocoa belt," located across the southern region of Côte d'Ivoire.

14.     Their small operation and fragmented presence across the country favor a system in which farmers sell to intermediaries who will collect the beans and gather them in warehouses. These intermediaries are either cooperatives, where the farmers are part of a cooperative system,

---

[4] Defendant Mondelez was originally part of Kraft Foods Group, Inc., until the companies split in 2012. *See* https://www.mondelezinternational.com/investors/stock/spin-off-information/ (last accessed January 26, 2024)
[5] *See* https://www.mondelezinternational.com/About-Us/ (last accessed January 26, 2024)
[6] *See* https://www.mondelezinternational.com/About-Us/Our-Way-of-Doing-Business/ (last accessed January 26, 2024)
[7] *Mondelez Code of Conduct*, p. 6, https://www.mondelezinternational.com/assets/PDFs/employeecodeofconduct.pdf (last accessed January 26, 2024)
[8] Macek, Paul et al., *"Farmer Livelihoods" World Cocoa Foundation*, https://www.worldcocoafoundation.org/wp-content/uploads/2018/08/2018-WCF-Learning-Meeting-Report_R3.pdf (last accessed January 26, 2024)

or individuals called "middlemen", who are not part of any formal organization. Middlemen collect beans across diverse farms in the cocoa belt, where no monitoring takes place, to sell to grinders or traders, and then to manufacturers such as Mondelez.

15.     The disparity in market power between these disperse and small cocoa farmers and multinational chocolate corporations has led to those cocoa farmers being grossly underpaid. According to a recent Channel 4 Dispatches documentary, cocoa farmers are paid as little as $3 per day.[9] Thus, cocoa farmers are forced to resort to cheap child or slave labor.

16.     Indeed, child and slave labor are so ubiquitous in the Côte D'Ivoire that, as stated in the 2018 Cocoa Barometer Report: "Not a single company or government is anywhere near reaching the sector-wide objective of the elimination of child labour, and not even near their commitments of a 70% reduction of child labour by 2020."[10]

17.     This has been a persistent problem. In 2001, Senator Tom Harkin and Congressman Eliot Engel established the Harkin-Engel Protocol aimed at eliminating the worst forms of child labor in the cocoa sector. The worst forms of child labor are defined by the International Labor Organization (ILO)'s Convention 182 to include all forms of slavery or practices similar to slavery, such as the sale and trafficking of children, debt bondage and forced or compulsory labor.[11] That same year, Kraft Foods, Inc., (Mondelez split from Kraft in 2012)[12] signed the Harkin-Engel Protocol, signifying its commitment to eradicating the Worst Forms of Child Labor in West Africa. Signatories pledged to "develop and implement credible, mutually acceptable, voluntary, industry-wide standards of public certification" to ensure that cocoa beans were "grown and/or processed without the worst forms of child labor" by July 2005.  However, Kraft and Mondelez, like all other big cocoa companies in the Côte d'Ivoire, have repeatedly pushed out the date by which it commits to being child labor and slave-free.

---

[9] *See "Cadbury Exposed: Dispatches," Channel 4*, https://www.channel4.com/programmes/cadbury-exposed-dispatches  (last accessed January 26, 2024)
[10] *Cocoa Barometer 2018*, at page 5, https://voicenetwork.cc/wp-content/uploads/2019/07/2018-Cocoa-Barometer.pdf (last accessed January 26, 2024)
[11] *See C182 – Worst Forms of Child Labor Convention*, https://www.ilo.org/dyn/normlex/en/f?p=NORMLEXPUB:12100:0::NO::P12100_ILO_CODE:C182 (last accessed January 26, 2024)
[12] *See* https://www.mondelezinternational.com/investors/stock/spin-off-information/ (last accessed January 26, 2024)

18.     Most recently, at the most recent 8th Annual World Cocoa Foundation Meeting in August 2018 the industry admitted it could not make its 2020, or even 2025 goal of eradicating child labor in the cocoa supply chain. Effectively abandoning any set date, the Foundation admitted it was not likely it would meet its "aspiration for 2020" nor other targets "for the eradication of child labor by 2025.".[13] Mondelez is a member of this World Cocoa Foundation.[14]

19.     Mondelez's latest aspiration is the Cocoa Life program, enacted in 2012.[15] Mondelez states that its goal is to purchase all its cocoa through this Cocoa Life program by 2030. However, this Cocoa Life program is effectively an admission that its cocoa is not "sustainable." Instead, it is a clear attempt to vindicate the company to the public without taking any tangible actions to eradicate its use of child labor. It thus deceives consumers into believing that buying Mondelez's products will benefit farmers in Côte d'Ivoire and misleads them into thinking its product is produced free of child or slave labor.

20.     Mondelez makes false assurances that its Cocoa Life program is seeking to "accelerate positive impact and help drive sector transformation".[16] and that it is "working to help prevent and combat the risk of child labor." *Id.* Mondelez's Supplier Code of Conduct states that its partners and suppliers should "[n]ever use or tolerate the use of human trafficking, forced labor, or child labor as defined by the International Labor Organization (ILO)."[17] It also claims to "believe the entire cocoa sector should be free of child labor," and "explicitly prohibit[s] child labor and forced labor in [its] operations."

21.     Mondelez seeks to effect these changes through a three-prong approach of 1) Prevention Efforts; 2) Monitoring and Remediation; and 3) Helping Enable Systemic Solutions.[18]

---

[13] *See 2018 Child Labor Cocoa Coordinating Group 8th Annual Meeting Remarks,* https://www.worldcocoafoundation.org/blog/2018-child-labor-cocoa-coordinating-group-8th-annual-meeting-remarks/ (last accessed January 26, 2024)
[14] *See* https://www.worldcocoafoundation.org/about-wcf/members/ (last accessed January 26, 2024)
[15] *See* https://www.cocoalife.org/#:~:text=Cocoa%20Life%20is%20Mondel%C4%93z%20International's,supply%20of%20more%20sustainable%20cocoa (last accessed January 26, 2024)
[16] *See* https://www.cocoalife.org/the-program/child-protection/ (last accessed January 26, 2024)
[17] *See Mondelez International Supplier & Partner Code of Conduct,* https://www.mondelezinternational.com/assets/PDFs/MDLZ-Supplier-and-Partner-Code-of-Conduct.pdf (last accessed January 26, 2024)
[18] *Mondelēz, Cocoa Life Strategy to Help Children*, supra note 71 at 3, https://assets.ctfassets.net/qggsjlmpzfmx/66IBzgXnf3Qp0jsluOMfrN/b6ea4c5575ce18e3341e4d5acbcbe70c/cocoa-life-strategy-to-help-protect-children.pdf (last accessed January 26, 2024)

CLASS AND REPRESENTATIVE ACTION COMPLAINT

Mondelez claims that its "primary areas of response are mutually reinforcing and directly and indirectly help prevent child labor and support broader child protection." However, this is an approach that allows Mondelez to claim to make progress while actually shirking accountability by placing responsibility for its own supply chain onto the cocoa growing communities, suppliers, and partners. Mondelez seeks only the illusion of remediation while really doing nothing to remediate, instead ensuring child laborers will return to their hazardous work. Notably, Mondelez never claims that it does not use child labor.

22.     Further, Mondelez's Cocoa Life program represents that it is tackling child labor but relies solely on its own Child Labor Monitoring and Remediation System (CLMRS) to achieve that goal. CLMRS purports to be a community-based monitoring system to identify and remediate child labor. But Mondelez admits that it does not use CLMRS in all its so-called "Cocoa Life communities." In fact, by Mondelez's own measurements, CLMRS measures were only used in 61% of their West African farms in 2021, and in less than 30% of farms in years prior.[19] Further, most CLMRSs operate only in the better organized segments of the cocoa industry.[20] Even so, most cocoa is not traceable, and so Mondelez has no way of knowing whether child labor was involved in the production of most of its cocoa. *Id*.

23.     Even where CLMRS measures are used, there is no way to know from Mondelez's vague claims how much, if at all, its efforts actually reduce child labor. For example, when Mondelez claims that its communities have been covered by CLMRS, it does not specify whether young children have been successfully rehabilitated and removed from child labor.[21]

24.     While Mondelez touts its so-called achievements in preventing child slavery, child labor has undisputedly increased in Côte d'Ivoire. During the 2013-14 harvest season, 1,203,473 child laborers aged 5 to 17 were found to be working on cocoa farms in Côte d'Ivoire, with 95.9 percent engaged in hazardous work in cocoa production. In 2017, there were 1,682,754 child

---

[19] *Mondelēz International Releases 2021 Human Rights Due Diligence and Modern Slavery Report*, Jul. 12, 2022, https://ir.mondelezinternational.com/node/26986/pdf (last accessed January 26, 2024)
[20] *Cocoa Barometer 2022*, at 33, https://cocoabarometer.org/wp-content/uploads/2022/12/Cocoa-Barometer-2022.pdf (last accessed January 26, 2024)
[21] *See Mondelēz , Mondelēz ESG Datasheet (2022)*, https://www.mondelezinternational.com/assets/Snacking-Made-Right/SMR-Report/2022/MDLZ_ESG_Datasheet_2022.pdf (last accessed January 26, 2024)

laborers aged 5 to 17 working on cocoa farms in Côte d'Ivoire. The COVID-19 pandemic and school closures further increased child labor rates.[22]

25.     Moreover, approximately 90,000 children and adults are estimated to be trafficked to Côte d'Ivoire from neighboring countries such as Mali and Burkina Faso and subjected to forced labor on cocoa plantations.[23] The work children engage in on the cocoa farms includes burning and clearing fields, cutting down trees to expand cocoa plantations, spraying pesticides, using sharp tools to break pods, and transporting heavy loads of cocoa pods and water.[24]

26.     The increasing rates of child labor has caused chocolate companies, such as Mondelez, to refrain from reporting numbers of cases of hazardous child labor. For years, chocolate companies had been more transparent about child labor in their supply chain, a necessity to fix the problem. For example, Nestle posted its child labor rates on its website as late as 2019.[25] However, that trend has reversed and now companies, including Mondelez, refuse to publish such statistics. Therefore, there is no way to know how systemic Mondelez's use of child labor is.

27.     The U.S. Department of Labor describes the conditions of forced labor in chilling detail: "[s]ome children are sold by their parents to traffickers, some are kidnapped, and others migrate willingly but fall victim to traffickers who sell them to recruiters or farmers, where they end up in conditions of bonded labor. Some farmers buy the children and refuse to let them leave the farm until the debt of their purchase has been worked off. The children are frequently not paid for their work; some of their wages are paid to the recruiter or trafficker. These children are held against their will on isolated farms, are locked in their living quarters at night, and are threatened and beaten if they attempt to escape. They are punished by their employers with physical abuse. They are forced to work long hours, including overtime, and are required to work even when they are sick. Some children are denied sufficient food by their traffickers and employers."[26]

---

[22] *See Cocoa Barometer 2022*, https://cocoabarometer.org/wp-content/uploads/2022/12/Cocoa-Barometer-2022.pdf (last accessed January 26, 2024)
[23] *Tony Chocolonley – Our Mission,* https://tonyschocolonely.com/us/en/our-mission (last accessed January 26, 2024)
[24] *See Child Labor and Forced Labor Reports,* https://www.dol.gov/agencies/ilab/resources/reports/child-labor/cote-divoire (last accessed January 26, 2024)
[25] *See Nestle's Tackling Child Labour Risks Progress Report*, https://www.nestlecocoaplan.com/reports/tackling-child-labour (last accessed January 26, 2024)
[26] *See List of Products Produced by Forced or Indentured Child Labor,* https://www.dol.gov/agencies/ilab/reports/child-labor/list-of-products-print (last accessed January 26, 2024)

28.     Mondelez and other cocoa companies have long been aware that cocoa farming in Côte D'Ivoire relies heavily on child labor and slavery—and that children on Ivorian cocoa plantations are subjected to what the International Labor Organization (ILO) terms the "Worst Forms of Child Labor"—including trafficking, slavery, and exposure to toxic chemicals and hazardous tools.[27]

29.     Mondelez admits that the use of child labor and trafficking is an increasingly global concern. Mondelez cannot claim it is even using primarily or close to 50% child labor-free cocoa. As stated in the 2020 Cocoa Barometer Report: "Not a single company or government is anywhere near reaching the sector-wide objective of the elimination of child labour, and not even near their commitments of a 70% reduction of child labour by 2020."[28] Indeed, as stated by the latest Cocoa Barometer, "there are more children in hazardous child labour in cocoa than ten and twenty years ago" and "the absolute number of children involved in hazardous child labour is still growing."[29]

30.     Even more disturbingly, Mondelez has recently been caught using child-slave labor. The April 4, 2022, Channel 4 Dispatches exposed the deception of the Cocoa Life program. The short documentary demonstrated ongoing child slavery on Mondelez's plantations and graphically exposed the claims that "Cocoa Life" plantations in Ghana were child labor-free and fully "sustainable" were false.

31.     On November 28, 2023, Sandra Nketiah, an individual who was part of the Channel 4 documentary, filed a lawsuit against Mondelez claiming that she was forced to work on a Mondelez plantation from ages 10-19. In the complaint, she recounts some of the work she was forced to do, such as performing hazardous work in violation of the ILO Convention No. 182 "including using a sharp machete to weed the cocoa trees and trim leaves, cut down cocoa pods from the trees, and open the cocoa pods."[30] She was eventually freed by individuals who heard her story and helped her attend university. After Mondelez learned about Nketiah's story, instead of placing her in a rehabilitation program, they sent men to threaten her and her family. *Id*.

---

[27] *See The Worst Forms of Child Labor*, https://www.ilo.org/ipec/facts/WorstFormsofChildLabour/lang--en/index.htm (last accessed January 26, 2024)
[28] *Cocoa Barometer 2018*, at page 5, https://voicenetwork.cc/wp-content/uploads/2019/07/2018-Cocoa-Barometer.pdf (last accessed January 26, 2024)
[29] *Cocoa Barometer 2022*, at page 31, https://cocoabarometer.org/wp-content/uploads/2022/12/Cocoa-Barometer-2022.pdf (last accessed January 26, 2024)
[30] *Kassim, et al, v. Cargill, et al*., Complaint, at page 47

32.     This story makes Cocoa Life's prevention and remediation claims all the more despicable. Sandra Nketiah was not "sustainably removed" from performing hazardous work; she was threatened for exposing Mondelez's false claims to the world.

**B.      Mondelez Knows It Is Causing Environmental Degradation.**

33.     Similarly, Mondelez's production and purchasing mechanisms in the Côte D'Ivoire do not follow any sustainable environmental protocols, and actually adversely affect the local ecosystem. The rainforest in Côte D'Ivoire has decreased from 16 million hectares in 1960, making up half of the country, to less than 2 million hectares by 2010.[31] Mondelez's overproduction and indiscriminate purchasing in Côte D'Ivoire has contributed to this mass deforestation. *Id*. An estimated 40 percent of the Ivorian cocoa harvest currently comes from inside classified or protected areas. This has devastating consequences for biodiversity and the local microclimate (including desertification and changing weather patterns). *Id*. at 18-19.

34.     Many of Côte D'Ivoire's national parks and protected areas have been entirely or almost entirely cleared of forest and replaced with cocoa growing operations.[32] For years the world's major chocolate companies have been buying cocoa grown through the illegal deforestation of national parks and other protected forests, in addition to driving extensive deforestation outside of protected areas. *Id*. In the world's two largest cocoa producing countries, Ivory Coast and Ghana, the market created by the chocolate industry has been the primary source for the destruction of environmentally protected areas. *Id*. As Mighty Earth reports, "many of the country's national parks and conservation lands have been cleared of their forest to make way for cocoa operations to feed demand from large chocolate companies like Nestlé, Cadbury [owned by Mondelez], and Mars."[33] *Id*.

---

[31] *Cocoa Barometer 2018*, at page 19, https://voicenetwork.cc/wp-content/uploads/2019/07/2018-Cocoa-Barometer.pdf (last accessed January 26, 2024)
[32] *Chocolate's Dark Secret,* Mighty Earth, 2017, http://www.mightyearth.org/wpcontent/uploads/2017/09/chocolates_dark_secret_english_web.pdf (last accessed January 26, 2024)
[33] Cadbury is owned by Mondelez International. *See* https://www.mondelezinternational.com/Our-Brands/Cadbury/

35.     Mondelez claims to fight against deforestation. It states that its goal is to "to seek no deforestation across our primary commodities following a phased approach starting with our European Business by 30 December 2024 and roll out to our other regions by 31 December 2025"[34]

36.     Mondelez currently has no protocols in place to prevent purchasing cocoa produced on protected lands. In fact, Mondelez is involved in deforesting Indigenous communities through industrial logging.[35]

37.     In addition to mass deforestation, the current known and common practices around cocoa farming are not sustainable. There is excessive use of fertilizers and pesticides and a loss of biodiversity.[36] Chemicals pollute waterways, killing wildlife and harming communities. Deforestation exposes shade-dependent plants to full sun, which increased the biosphere's susceptibility to disease.

**C.      Consumers Are Willing to Pay a Premium for "Sustainable" and Ethically Sourced Products.**

38.     Consumers care deeply about the human cost behind the products they buy, and the labor practices present in the supply chain. One study found that approximately 60% of consumers would stop buying a product if they knew that human trafficking or forced labor was used to create it.[37] Another study showed over three-quarters of consumers are more motivated to purchase a company's products or services if the company shows they are committed to making the world a better place.[38] This same survey showed nearly half of consumers (and a majority of millennials) pay attention to a company's ESG advertisements. *Id.*

39.     This concern translates to consumer spending. A 2022 study has shown that consumers are willing to pay a 10% premium for products that make social responsibility

---

[34] *Mondelez – Deforestation*, https://www.mondelezinternational.com/snacking-made-right/esg-topics/deforestation/ (last accessed January 26, 2024)

[35] *Keep Forests Standing*, https://www.ran.org/wp-content/uploads/2023/02/RAN_KFS_Long_Isun_FINAL-2.pdf (last accessed January 26, 2024); *see also Protests Call Out Mondelez on Forest Destruction, Human Rights Violations, and Climate Inaction*, https://www.ran.org/press-releases/protest-calls-out-mondelez-on-forest-destruction-human-rights-violations-and-climate-inaction-as-company-holds-shareholder-meeting/ (last accessed January 26, 2024)

[36] *Chocolate's Dark Secret, Mighty Earth, 2017*, http://www.mightyearth.org/wpcontent/uploads/2017/09/chocolates_dark_secret_english_web.pdf (last accessed January 26, 2024)

[37] *Stephen DeAngelis, Even If Consumers Aren't Aware of Human Trafficking, Companies Need to Be*, ENTERRA SOLUTIONS (Mar. 6, 2020), https://enterrasolutions.com/blog/even-if-consumers-arent-awareof-human-trafficking-companies-need-to-be/ (last accessed January 26, 2024)

[38] *2019 Aflac CSR Survey*, AFLAC (July 2019), https://www.aflac.com/docs/about-aflac/csr-surveyassets/2019-aflac-csr-infographic-and-survey.pdf (last accessed January 26, 2024)

promises.[39] A Harvard study found that consumers are willing to pay a premium of up to 23% for ethically sourced coffee.[40]

40.     Not only are consumers willing to pay more, but they also tend to buy higher quantities of products with ESG claims. A McKinsey study found that products with "ESG-related claims accounted for 56 percent of all growth – about 18 percent more than would have been expected given their standing at the beginning of the five-year period…".[41] This same study showed "sweet snacks" with ESG claims outpaced those products without ESG claim in growth by approximately 10%. *Id.*

**D.     Despite Knowing it is Contributing to Child Labor, Slave Labor, and Environmental Degradation, Mondelez Advertises its Products as "Sustainable" In Order to Take Advantage of Consumers.**

41.     Despite the ubiquity of child and slave labor in the Ivory Coast, Mondelez's acknowledgement of its use of child labor, and the recent publicity it has faced regarding child and slave labor, Mondelez markets many of its products as "sustainable." For example, Oreo's packaging boasts Mondelez's Cocoa Life's seal, as well as a "100% Sustainably Sourced Cocoa" claim. On the back of the package, Mondelez claims that it helps "support sustainable cocoa sourcing" and that Cocoa Life works together with farmers to grow cocoa in ways that help protect people & planet."

---

[39] *Consumer Trends 2022: Corporate Social Responsibility and Consumer Activism*, LEGER (Feb. 1, 2022), https://blog.legerusa.com/consumer-trends-2022-consumer-activism (last accessed January 26, 2024)
[40] Michael J. Hiscox, Michael Broukhim & Claire S. Litwin, *Consumer Demand for Fair Trade: New Evidence from a Field Experiment Using eBay Auctions of Fresh Roasted Coffee* (Mar. 16, 2011), https://scholar.harvard.edu/sites/scholar.harvard.edu/files/hiscox/files/consumer_demand_fair_trade.pdf (last accessed January 26, 2024)
[41] *Consumers Care About Sustainability—And Back it up with Their Wallets*, MCKINSEY & CO. (Feb. 6, 2023), https://www.mckinsey.com/industries/consumer-packaged-goods/our-insights/consumers-careabout-sustainability-and-back-it-up-with-their-wallets (last accessed January 26, 2024)

1

2

3

4

5

6

7

8

9

10

11

12

13

14



15

16

17

18

19

20

21

22

23

24

25

26

27

28



CLASS AND REPRESENTATIVE ACTION COMPLAINT

42.     Mondelez cannot publicly claim that it adopts sustainable practices and that it is working to improve the lives of farmers when its unethical practices are in fact perpetuating a system that relies on and increases child and slave labor.

43.     To further bolster these misrepresentations, Mondelez uses third-party certifications, such as the Rainforest Certification apparent on Clif Bars:

 

44.     Like Mondelez, Rainforest Certification also claims to "address" child labor, but this is an empty promise. Rainforest certified farms have also been found to use child labor despite the certification. [42] This is partly because these certifications rely on "self-reporting," thus incentivizing farmers to lie to inspectors to earn a higher pay. *Id*. Moreover, when outside inspections do occur, they often give advanced notice, making it unlikely that inspectors will find children working. *Id*.

45.     The Federal Trade Commission has issued guidelines for companies that market their products as environmentally friendly. The FTC Green Guides ("Guides") apply to claims about the "environmental attributes" of products. The FTC does not define the phrase "environmental attributes," but California has interpreted this to include claims that products are earth friendly, environmentally friendly, or green. (Cal. Bus. & Prof. Code) § 17580.5. Claims may

---

[42] *CAL Finds Evidence of Child Labor on Rainforest Alliance Certified Farms,* https://corpaccountabilitylab.org/calblog/2021/10/25/cal-finds-evidence-of-child-labor-on-rainforest-alliance-certified-farms (last accessed January 26, 2024)

CLASS AND REPRESENTATIVE ACTION COMPLAINT

be asserted directly or by implication, such as through the use of symbols, logos, or certifications. 16 C.F.R. § 260.1.

46.     The Guides prohibit "deceptive acts" or representations which are "likely to mislead consumers acting reasonably under the circumstances and [are] material to consumers' decisions." This includes representations made through labeling, advertising, or other promotional activities. 16 C.F.R. § 260.1.

47.     "Unqualified general environmental benefit claims"—including terms like "eco-friendly"—typically qualify as deceptive, because they tend to convey that a product has "no negative environmental impact." Marketers are almost invariably unable to substantiate such broad assertions, as required by the FTC in order to demonstrate that a claim was not misrepresentative. 16 C.F.R. § 260.4.

48.     Sustainability is a broad concept that encompasses a wide range of environmental and social practices. The term generally connotes a combination of environmental, social, and ethical concerns.[43] For example, Unilever describes its sustainable sourcing strategy as an "an unwavering commitment to deeper transparency and traceability on climate and social impact issues," which includes "a focus on living conditions and economic viability for the smallholders in [its] supply chain."[44] Similarly, PepsiCo's sustainable sourcing efforts include a focus on "health, safety, and hygiene, environmental and management system, and working hours."[45] In the context of the chocolate industry, Mondelez's competitor, Barry Callebaut, defines sustainability to include human rights as well as environmental impact.[46]

49.     By labeling its products as "sustainably sourced" or "100% sustainable," Mondelez advances an unqualified general environmental claim. Based on Mondelez's representation of its products as "100% sustainable," Plaintiff reasonably inferred that Mondelez's "sustainably sourced" cocoa was produced in a socially and environmentally conscious manner.

---

[43] ECOVADIS, *Sustainable Sourcing,* https://www.ecovadis.com/us/sustainable-sourcing/ (last accessed January 26, 2024)

[44] UNILEVER, *Planet & Society,* https://www.unilever.com/sustainable-living/reducing-environmental-impact/sustainable-sourcing/ (last accessed January 26, 2024)

[45] PEPSICO, *Sustainable Sourcing,* https://www.pepsico.com/sustainability/sustainable-sourcing (last accessed January 26, 2024)

[46] Barry Callebaut, *Sustainable Sourcing,* https://www.barry-callebaut.com/en/group/forever-chocolate/ethical-sourcing-and-business/sustainable-sourcing (last accessed January 26, 2024)

50.     Mondelez cannot substantiate its claims to use "sustainably sourced cocoa." To the extent that "sustainably sourced" encompasses a concern for social as well as environmental welfare, Mondelez's reliance on the worst forms of child labor contradicts any such claim. Labor involving hazardous and environmentally destructive chemicals, dangerous machinery, and victims of trafficking is the subject of international condemnation.[47] A reasonable consumer would not view such practices as "sustainable" in any sense of the word.

51.     In an analysis of different industries, chocolate products' growth was the most pronounced based on claims of sustainability, with such products growing at more than 3 times the rate of chocolate products without sustainability claims.[48]

52.     Moreover, Mondelez knows that consumers are willing to pay a premium for sustainable or environmentally beneficial products.[49] Mondelez's misrepresentations materially influenced Plaintiff's decision to purchase its chocolate products and extracted a premium.

53.     Mondelez blatantly greenwashes its products in order to increase its own sales and deceptively earn the goodwill and support of the public. "Greenwashing" is commonly known as the practice of making an unsubstantiated or misleading claim about the environmental or social benefits of a product, service, technology or company practice.[50] Mondelez claims that its products are sustainable and its relationship with the suppliers improves the lives of the cocoa farmers in the Côte D'Ivoire region. This could not be further from the truth. Mondelez's products were not sourced from sustainable farming practices but rather off the backs of child slave and trafficked labor.

54.     Greenwashing in its own right can be an extremely misleading and oftentimes harmful practice. In Mondelez's case, its misrepresentations have perpetuated and funded child

---

[47] *See, e.g.* https://www.ilo.org/ipec/facts/WorstFormsofChildLabour/lang--en/index.htm (last accessed January 26, 2024)

[48] Nielsen, *Sustainability Sells*, https://nielseniq.com/global/en/insights/report/2018/sustainability-sells-linking-sustainability-claims-to-sales/ (last accessed January 26, 2024); *see also* Cargill, *Sustainability's Influence on Chocolate Purchase Decisions*, https://www.cargill.com/2020/sustainability-influence-on-chocolate-purchase-decisions (last accessed January 26, 2024)

[49] ESG Today, *Consumers Willing to Pay 12% Premium for Sustainable Products*, https://www.esgtoday.com/consumers-willing-to-pay-12-premium-for-sustainable-products-bain-survey/#:~:text=Despite%20the%20willingness%20to%20pay,almost%20half%20of%20developed%20market (last accessed January 26, 2024)

[50] *See Definition of Greenwashing*: https://whatis.techtarget.com/definition/greenwashing (last accessed January 26, 2024)

slave labor. Mondelez represents that its products not only support sustainable farming practices but provide other general environmental and social benefits. These representations are impossible to reconcile with the fact that Mondelez actively exploits child slaves, such as Sandra Nketiah, in order to obtain an ongoing, cheap supply of cocoa.

55.     Furthermore, the practices by which Mondelez obtains its cocoa supply cause harm to the environment as well. For example, current cocoa farming is causing soil erosion as well as deforestation. When the soil erodes the land becomes less and less fertile and yields decrease.[51] It's no secret that cocoa farms struggle to meet the increasing demand for chocolate. It is estimated that the demand for chocolate will increase twofold by the year 2050.[52] As a result, farmers have shifted towards unsustainable, less environmentally conscious practices to meet these demands.[53]

56.     For instance, farmers now use large amounts of pesticides to rid the crops of pests and create larger yields in shorter periods of time. The pesticides employed damage the land and the health of the sprayers applying the pesticide—mainly the child laborers. Furthermore, this excessive spraying of pesticides can also cause the weeds and insects to build up a resistance which will eventually create more harm to the crops and the opposite of its intended effect.

**E.     Mondelez Has the Ability and Means to Solve This Problem.**

57.     First, Mondelez chose to place deceptive and false statements onto its packaging. Mondelez should not try to trick consumers into believing its products are environmentally friendly and free from child labor when that is so blatantly not the case. Mondelez should thus remove any "sustainable" claims from the packaging of its products.

58.     Second, even though Mondelez claims child labor is a "complex issue,"[54] it is not. As the latest Cocoa Barometer stated: "Even the most effective child labour interventions will not be able to solve the challenges if the root causes of child labour are not addressed – in particular the structural poverty of cocoa growing communities… As such, the current CLMRS approaches

---

[51] Nieberg, O., (2015), *Confectionary News: What Is the Environmental Impact of Cocoa Production.* https://www.confectionerynews.com/Article/2015/04/29/What-is-the-environmental-impact-of-cocoa-production (last accessed January 26, 2024)
[52] Bisseleua, D.H.B., Missoup, A.D., Vidal, S. (2009), *Biodiversity Conservation, Ecosystem Functioning, and Economic Incentives under Cocoa Agroforestry Intensification. Conservation Biology*, 23(5), 1176-1184, https://onlinelibrary.wiley.com/doi/abs/10.1111/j.1523-1739.2009.01220.x (last accessed January 26, 2024)
[53] Slomkowski, K. (2005). *Chocolate's Dark Side. E: The Environmental Magazine*, 16(6), 33-342.
[54] https://www.cocoalife.org/the-program/child-protection/ (last accessed January 26, 2024)

can only be seen as part of what needs to happen. ***Any child labour approach must directly and clearly tackle farmer poverty.*** (emphasis added)" [55]

59.     Mondelez is therefore perpetuating the cycle of child labor by paying farmers $3 per day. [56] Mondelez, a multi-billion-dollar, multi-national company, could end the system of child labor if they wanted to by paying cocoa farmers a livable wage.

60.     The many "solutions" offered by Mondelez's Cocoa Life plan are clearly greenwashing and empty words. If Mondelez truly wants to become "sustainable" (as it claims it already is), then it must significantly increase investment and ambitions. [57]

61.     Moreover, there are a variety of technological innovations that have been developed to help cocoa producers eradicate child labor, forced labor and trafficking, through true transparency in their global, complex supply chains. These technologies are already used in the supply chains of other commodities, demonstrating that their implementation and application is within the reach of what a large, profitable company like Mondelez can do. As one of the leaders and largest transnational corporations in the agriculture sector, Mondelez has no excuse to turn its back to these solutions while continuing to claim and advertise that it sustainably sources cocoa in Côte d'Ivoire.

### V. PLAINTIFF'S EXPERIENCES

62.     Over the last several years, Plaintiff Waggener Van Meter regularly purchased Defendant Mondelez's chocolate/cocoa products, including but not limited to Gluten Free Oreos and Toblerone bars at least once a month for over four years. Plaintiff purchased these products from Safeway stores located in Alameda County, among other Mondelez products that bore the Cocoa Life seal and other false sustainability claims. These products were labeled with the Cocoa Life seal, or other advertisements such as "100% SUSTAINABLY SOURCED COCOA"; "COCOA LIFE"; and advertised that: "through our partnership with Cocoa Life we help support sustainable farming." See:

---

[55] *Cocoa Barometer 2022*, at page 33, https://cocoabarometer.org/wp-content/uploads/2022/12/Cocoa-Barometer-2022.pdf (last accessed January 26, 2024)
[56] *See "Cadbury Exposed: Dispatches," Channel 4*, https://www.channel4.com/programmes/cadbury-exposed-dispatches (last accessed January 26, 2024)
[57] *Cocoa Barometer 2022*, at page 31, https://cocoabarometer.org/wp-content/uploads/2022/12/Cocoa-Barometer-2022.pdf (last accessed January 26, 2024)





CLASS AND REPRESENTATIVE ACTION COMPLAINT

63. Plaintiff saw and relied upon the foregoing misrepresentations about the social and environmental benefits of the products in making her decision to purchase the products. Plaintiff purchased the above-mentioned Mondelez products numerous times during the four years preceding the filing of the instant Complaint. Her most recent purchases were in approximately November of 2023.

64. Plaintiff suffered injury in that she would not have bought the Mondelez Cocoa Life/Sustainability-labeled products had she known the products were not sourced from sustainable farming practices but rather off the backs of child and slave labor.

## CLASS ACTION ALLEGATIONS

65. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals (the "Class"), defined as follows:

> All United States residents who purchased Mondelez Products marked with the "Cocoa Life" seal, "sustainably sourced," "100% sustainable," "improv[ing] the lives of farmers," or any other false sustainability claims within the United States during the four-year period preceding the filing of the instant Complaint to the date of judgment.

66. Excluded from the Class are any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

67. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

68. At this time, Plaintiff does not know the exact number of Class members; however, given the nature of the claims and the number of stores in the United States selling Mondelez's Products, Plaintiff believes that the Class members are so numerous that joinder of all members is impracticable.

69. There is a well-defined community of interest in the questions of law and fact involved in this case. The following questions of law and fact are common to the Class members and predominate over questions that may affect individual Class members, such as:

a. Whether Mondelez misrepresented the environmental and social benefits of products labeled with fair trade, environmentally sustainable and socially beneficial labeling;

b. Whether Mondelez's labeling, marketing, advertising, and/or selling of its products with fair trade, environmentally sustainable and socially beneficial representations constituted an unfair and/or deceptive trade practice;

c. Whether Mondelez participated in and pursued the common course of conduct complained of herein;

d. Whether Mondelez misled Plaintiff and Class Members into believing its products were sustainable;

e. Whether Mondelez was unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Mondelez to retain the benefits conferred upon it by Plaintiff and the other Class members; and

f. Whether Plaintiff and Class Members are entitled to monetary damages, and if so, what is the measure of those damages.

70.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all Class members, purchased Mondelez's products bearing the sustainable seals or certifications in a typical consumer setting and sustained damages from Mondelez's wrongful conduct.

71.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class.

72.     The requirements of Fed. R. Civ. P. 23(b)(3) are met as common issues predominate over any individual issues, and treatment of this matter as a class action is superior to numerous individual actions.

73.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met, as Mondelez has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

74. Mondelez's conduct is generally applicable to the Class as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, Mondelez's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

75. The litigation of separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Mondelez. For example, one court might enjoin Mondelez from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

76. Plaintiff and other Class Members have suffered damages as a result of Mondelez's unlawful and wrongful conduct. Absent a class action, Mondelez will retain substantial funds received as a result of its wrongdoing, and such unlawful and improper conduct shall, in large measure, not go remedied. Absent a class action, the members of the Class will not be able to effectively litigate these claims and will suffer further losses, as Mondelez will be allowed to continue such conduct with impunity and retain the proceeds of its ill-gotten gains.

## <u>COUNT I</u>
### (Unfair and Deceptive Acts and Practices In Violation of the California Consumers Legal Remedies Act)

77. Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint and further alleges as follows:

78. This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

79. Plaintiff and the other Class members are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the products at issue for personal, family, or household purposes.

80. Plaintiff and Mondelez, and the other Class members and Mondelez, have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

81. The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was

undertaken by Mondelez in transactions intended to result in, and which did result in, the sale of goods to consumers.

82.     As alleged more fully above, Mondelez has violated the CLRA by falsely representing to Plaintiff and the other Class members that Mondelez products labeled with the environmental and socially beneficial seals or certifications have sustainable qualities and were independently verified as having been produced using environmentally sound and socially responsible practices.

83.     As a result of engaging in such conduct, Mondelez has violated California Civil Code § 1770(a)(2), (a)(5), (a)(7), and (a)(9).

84.     Pursuant to California Civil Code § 1780(a)(1), (a)(3), (a)(4) and (a)(5), Plaintiff seeks on behalf of herself and the Class Members actual damages, restitution, punitive damages, attorneys' fees and costs of litigation, and any other relief the court deems proper.

85.     Pursuant to California Civil Code § 1780(b)(1), Plaintiff seeks on behalf of all Class Members who are senior citizens or disabled as defined in California Civil Code § 1761(f) and (g), an additional award of up to $5,000 for physical, emotional or economic damage.

86.     Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order requiring Mondelez to:

    a.  remove and/or refrain from making statements representing that products derived from alleged certified cocoa farms support sustainable farming or provide other general environmental and social benefits; and/or

    b.  remove and/or refrain from making representations that the fair trade, environmentally sustainable and socially beneficial seals or certifications indicate that a product has been independently verified as having been produced using environmentally sound and socially responsible practices.

87.     Plaintiff and the other Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

88.     The unfair and deceptive acts and practices of Mondelez, as described above, present a serious threat to Plaintiff and the other Class members.

89.     On December 29, 2023, Plaintiff Waggener Van Meter sent a letter to Mondelez via certified mail that provided notice of Mondelez's violation of the CLRA and demanded that within thirty (30) days from that date, Mondelez correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Mondelez refused to do so, a complaint seeking damages in accordance with the CLRA would be filed. Thirty days elapsed, and Mondelez failed to respond or rectify the unlawful, unfair, false, and/or deceptive practices alleged herein.

### COUNT II
### (Violation of California's Unfair Competition Law)

90.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint and further alleges as follows:

91.     By committing the acts and practices alleged herein, Mondelez has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the Class as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

92.     **Unlawful Conduct.** Mondelez has violated the UCL's proscription against engaging in unlawful conduct as a result of:

a.  violations of the CLRA, Cal. Civ. Code § 1770(a)(4), (a)(5), (a)(7), and (a)(9), as alleged above; and

b.  violations of California's Environmental Marketing Claims Act, Cal. Bus. & Prof. Code §§ 17580-17581, as alleged below:

93.     Mondelez has made misrepresentations that the environmental and socially beneficial seals or certifications indicate that a product has those qualities and has been independently verified as having been produced using environmentally sound and socially responsible practices.

94.     Plaintiff and the other Class members have suffered injury in fact and have lost money or property as a result of Mondelez's violations of California's Environmental Marketing Claims Act ("EMCA"), Cal. Bus. & Prof. Code §§ 17580-17581.

95.     In particular, Mondelez has violated and continues to violate California Business and Professions Code § 17580.5, which makes it "unlawful for any person to make any untruthful,

deceptive, or misleading environmental marketing claim, whether explicit or implied" and which defines an environmental marketing claim to include "any claim contained in the [the FTC's Green Guides]."

96.     The Federal Trade Commission (FTC), whose mission is partly "[t]o prevent business practices that are anticompetitive or deceptive or unfair to consumers," has promulgated industry guidelines, known as the "FTC Green Guides,"[58] that apply to the unfair and deceptive nature of Mondelez's environmental marketing claims.

97.     Environmental marketing claims that violate the standards of the Green Guides are per se unlawful under California's Environmental Marketing Claims Act ("EMCA"), Cal. Bus. & Prof. Code §§ 17580-17581. The acts and omissions alleged herein are in contravention of the FTC Green Guides and in violation of the EMCA in several respects. The FTC Green Guides lay out three applicable principles. First, manufacturers should avoid making general environmental claims without noting specific benefits.[59] Second, endorsements that appear to be from third-party organizations must be independent and any material connections with the manufacturer must be disclosed.[60] Additionally, any representations that appear to be endorsement must also comply with the FTC Guide on Endorsements.[61]

98.     Mondelez's use of the environmental and socially beneficial seals or certifications is in contravention of the FTC's Guides on Endorsements because Mondelez's Cocoa Life program does not exercise the expertise that consumers reasonably expect from experts in sustainable farming.[62] These seals/certifications do not evaluate certified farms as extensively as an expert group on farm sustainability would.

---

[58] *See*, FTC, *GUIDES FOR THE USE OF ENVIRONMENTAL MARKETING CLAIMS*, 16 C.F.R. § 260, *available at* http://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguides.pdf (last visited May 13, 2014) (last accessed January 26, 2024)

[59] 16 C.F.R. § 260.3(a) Additionally, such specific claims should be clear, prominent, and specific. *Id.*

[60] *See* 16 C.F.R. § 260.6. The subsection on certifications and seals of approval says that certifications or seals that do not clearly convey the basis for the certification should not be used because it could be interpreted as making a general environmental claim. 16 C.F.R. § 260.6(d). The guides recommend that if the positive attributes are too numerous to disclose, the seal of approval may direct consumers to a website that specifies the claims as long as the content on that website is truthful and accurate. 16 C.F.R. § 260.6(e). This subsection specifies that a certification that conveys that it has been certified by an independent organization, it must disclose material connections between the organization and the manufacturer. 16 C.F.R. § 260.6(b).

[61] 16 C.F.R. § 260.6(b). The FTC Guide on Endorsements is published at 16 C.F.R. § 255.

[62] *See* 16 C.F.R. § 255.3 ("[t]his evaluation must . . . [be] as extensive as someone with the same degree of expertise would normally need to conduct in order to support the conclusions presented in the endorsement.").

CLASS AND REPRESENTATIVE ACTION COMPLAINT

99.     Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiff and the other Class members seek an order of this Court that includes, but is not limited to, an order requiring Mondelez to:

       a.  remove and/or refrain from making statements representing that products derived from the Mondelez Cocoa Life program and/or have third-party certifications that support sustainable practices or provide other general environmental and social benefits; and/or

       b.  remove and/or refrain from making representations that the environmental and socially beneficial seals or certifications indicate that a product has been independently verified as having been produced using environmentally sound and socially responsible practices.

100.     **Fraudulent Conduct.** Mondelez's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

101.     As more fully described above, Mondelez's misleading representations regarding the environmental and socially beneficial seals or certifications is likely to deceive reasonable consumers. Indeed, Plaintiff and the other Class members were unquestionably deceived regarding the Mondelez Cocoa Life program and/or third-party certifications and the environmental and social benefits of purchasing products bearing the environmental and socially beneficial seals or certifications, as Mondelez's promotion and use of the Mondelez Cocoa Life program and/or third-party certifications and environmental and socially beneficial seals or certifications misrepresented and/or omitted the true facts concerning the material connections between the Mondelez Cocoa Life program and/or third-party certifications and the entities it allows to be certified pursuant to the Mondelez Cocoa Life program and/or third-party certifications standards. Mondelez's promotion and use of the its Cocoa Life program and/or third-party certifications and environmental and socially beneficial seals or certifications misrepresented and/or omitted the true facts concerning the environmental and social benefits of products labeled with the environmental and socially beneficial seals or certifications. Said acts are fraudulent business practices.

102.     **Unfair Conduct.** Mondelez's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

103.     Plaintiff and the other Class members suffered a substantial injury by virtue of buying products that they would not have purchased absent Mondelez's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled products.

104.     There is no benefit to consumers or competition from deceptively marketing and labeling products that purport to provide consumers with an environmentally and socially responsible alternative to other products, as determined according to independent standards.

105.     Plaintiff and the other Class members had no way of reasonably knowing that the products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

106.     The gravity of the consequences of Mondelez's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other Class members.

107.     Mondelez's violations of the UCL continue to this day.

108.     Pursuant to California Business and Professional Code § 17203, Plaintiff and the Class seek an order of this Court that includes, but is not limited to, an order requiring Mondelez to:

a.   remove and/or refrain from making statements representing that products derived from the Mondelez Cocoa Life program and/or third-party certified farms support sustainable farming or provide other general environmental and social benefits; and/or

b.   remove and/or refrain from making representations that the environmental and socially beneficial seals or certifications indicate that a product has been independently verified as having been produced using environmentally sound and socially responsible practices;

c.   provide restitution to Plaintiff and the other Class members;

d.   disgorge all revenues obtained as a result of violations of the UCL; and

e.   pay Plaintiff's and the Class's attorney fees and costs.

### COUNT III
### (Unjust Enrichment)

109.   Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint and further alleges as follows:

110.   Plaintiff and the Class members conferred benefits on Defendant by purchasing the Products.

111.   Defendant has knowledge of such benefits, and voluntarily accepts and retains these benefits.

112.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class members' purchases of the Products.

113.   Retention of that money under these circumstances is unjust and inequitable because Defendant falsely and misleadingly represented through its labeling, advertising and marketing materials that its products are sustainable, when the Products are not in fact sustainable.

114.   These misrepresentations and omissions caused injuries to Plaintiff and the Class members because they would not have purchased the Products, or would not have paid as much for the Products, had they known that the Products are not sustainable.

115.   Because Defendant's retention of the non-gratuitous benefits conferred to it by Plaintiff and the Class members is unjust and inequitable, Defendant ought to pay restitution to Plaintiff and the Class members for its unjust enrichment.

116.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class members are entitled to restitution or disgorgement in an amount to be proved at trial.

### PRAYER FOR RELIEF

Wherefore Representative Plaintiff, individually and on behalf of all Class members and all others similarly situated, prays for relief as follows relating to her collective, class and representative action allegations:

1.   An order certifying the proposed Class; appointing Plaintiff as representative of the Class; and appointing Plaintiff's undersigned counsel as Class counsel;

2.     A declaration that Mondelez is financially responsible for notifying Class members of the pendency of this suit;

3.     An award of restitution pursuant to California Business and Professions Code §§ 17203 and 17535 and California Civil Code 1780(a)(3) for Class members;

4.     An award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for Class members;

5.     An order enjoining Mondelez's unlawful and deceptive acts and practices, pursuant to California Business and Professions Code §§ 17203 and 17535 and California Civil Code § 1780(a)(2), to remove and/or refrain from making statements representing that products derived from Mondelez and Cocoa Life program and/or third-party certified farms support sustainable farming or provide other general environmental and social benefits and/or to remove and/or refrain from making representations that the environmental and socially beneficial seals or certifications indicate that a product has been independently verified as having been produced using environmentally sound and socially responsible practices;

6.     Injunctive relief for Class members pursuant to California Civil Code § 1780;

7.     Actual damages pursuant to California Civil Code § 1780 (a)(1);

8.     Additional awards of up to $5,000 for physical, emotional or economic damage for all senior citizen and disabled Class Members, pursuant to California Civil Code § 1780(b)(1);

9.     Statutory damages in the maximum amount provided by law;

10.    Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

11. An order awarding Plaintiff and other Class members the reasonable costs and expenses of this suit, including their attorneys' fees; and

12. Any further relief that the Court may deem appropriate.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all claims so triable.

DATED: January 30, 2024        **STEPHAN ZOURAS, LLP**

/s/*Lauren A. Warwick*
Lauren A. Warwick (State Bar No. 341643)
*Attorney for Plaintiff*

**STEPHAN ZOURAS, LLP**
James B. Zouras (Pro Hac Vice Pending)
Ryan F. Stephan (Pro Hac Vice Pending)
Justin M. Caparco (Pro Hoc Vice Pending)
Lauren A. Warwick, CA State Bar No. 341643
STEPHAN ZOURAS, LLP
222 West Adams Street, Suite 2020
Chicago, Illinois 60606
Telephone: (650) 561-4791
jzouras@stephanzouras.com
rstephan@stephanzouras.com
jcaparco@stephanzouras.com
lwarwick@stephanzouras.com

CLASS AND REPRESENTATIVE ACTION COMPLAINT